*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0385P (6th Cir.)
File Name: 01a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ASSOCIATION OF BANKS IN
INSURANCE, INC.; AMERICAN
BANKERS ASSOCIATION
INSURANCE ASSOCIATION;
OHIO BANKERS ASSOCIATION;
HUNTINGTON NATIONAL
BANK,
        *Plaintiffs-Appellees,*

    *v.*

HAROLD T. DURYEE,
Superintendent of Ohio
Department of Insurance,
        *Defendant,*

INDEPENDENT INSURANCE
AGENTS OF OHIO, INC.; OHIO
ASSOCIATION OF LIFE
UNDERWRITERS; OHIO
ASSOCIATION OF
PROFESSIONAL INSURANCE
AGENTS, INC.; OHIO LAND
TITLE ASSOCIATION;
INDEPENDENT INSURANCE
AGENTS OF AMERICA, INC.;

No. 99-3917

NATIONAL ASSOCIATION OF
LIFE UNDERWRITERS;
NATIONAL ASSOCIATION OF
PROFESSIONAL INSURANCE
AGENTS, INC.,
                    *Intervenors/*
        *Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-01120—James L. Graham, District Judge.

Argued:  August 2, 2000

Decided and Filed:  November 1, 2001

Before:  SUHRHEINRICH and DAUGHTREY, Circuit
Judges; COLLIER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Scott A. Sinder, COLLIER, SHANNON, RILL
& SCOTT, Washington, D.C., for Appellants.  Kathleen M.
Trafford, PORTER, WRIGHT, MORRIS & ARTHUR,
Columbus, Ohio, for Appellees.  **ON BRIEF:**  Scott A.
Sinder, John J. Manning, COLLIER, SHANNON, RILL &
SCOTT, Washington, D.C., for Appellants.  Kathleen M.
Trafford, PORTER, WRIGHT, MORRIS & ARTHUR,
Columbus, Ohio, for Appellee.  Yvette Rivera, OFFICE OF

_____

[*] The Honorable Curtis L. Collier, United States District Judge for the
Eastern District of Tennessee, sitting by designation.

THE COMPTROLLER OF THE CURRENCY, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. This action involves the right of a national bank, under § 13 of the Federal Reserve Act, 12 U.S.C. § 92, to act as an insurance agent in towns with a population of 5,000 or less. The plaintiffs, a national bank and several organizations whose memberships include national banks, filed suit against the Ohio Superintendent of Insurance seeking: (1) a declaratory judgment that certain Ohio licensing provisions as applied to national banks are preempted by 12 U.S.C. § 92; and (2) a permanent injunction preventing enforcement of these provisions against national banks to the extent that they are preempted. Specifically at issue is the viability of Ohio's "principal purpose test," as well as various statutory licensing requirements. Faced with cross-motions for summary judgment, the district court granted summary judgment in favor of the plaintiffs, providing them with the requested declaratory and injunctive relief.

Subsequent to the filing of the action, a number of insurance trade organizations intervened as defendants. They now appeal the district court's decision. However, because the state superintendent of insurance, the original party-defendant, has not appealed, apparently acquiescing in the order of non-enforcement of the state statutes in question, the plaintiffs challenge the standing of the intervenors before this court. For the reasons set out below, we conclude that the intervenors do indeed have standing to bring this appeal but, nevertheless, we affirm the judgment of the district court on the merits. Because of legislation enacted after judgment was entered, however, the case must be remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This challenge to the Ohio insurance licensing laws began when the Association of Banks in Insurance, Inc., the American Bankers Association Insurance Association, the Ohio Bankers Association, and the Huntington National Bank filed suit against Harold T. Duryee in his official capacity as head of the Ohio Department of Insurance.[1] Shortly thereafter, the Independent Insurance Agents of Ohio, Inc., the Ohio Association of Life Underwriters, the Ohio Association of Professional Insurance Agents, Inc., the Ohio Land Title Association, the Independent Insurance Agents of America, Inc., the National Association of Life Underwriters, and the National Association of Professional Insurance Agents, Inc., intervened as defendants in the suit. The intervenor-defendants are all insurance trade associations that represent independent insurance agents. They joined suit to protect their constituents' economic interests, which they claimed would be threatened if national banks were allowed to sell insurance without having to comply fully with Ohio's insurance laws.

Plaintiffs sued for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. They sought a ruling that 12 U.S.C. § 92[2] preempts certain Ohio insurance

---

[1] The Association of Banks in Insurance is a national trade association of financial institutions with an interest in insurance activities. The American Bankers Association Insurance Association is a separately-chartered nonprofit subsidiary of the American Bankers Association. The Ohio Bankers Association is a nonprofit trade association in Ohio. Included in the membership of all three organizations are national banks doing business in Ohio in towns with 5,000 or fewer inhabitants. Huntington National Bank is a national bank doing business in the Village of Groveport, Ohio.

[2] The statute provides in relevant part:

In addition to the powers now vested by law in the national banking associations organized under the law of the United

they would be applied to national banks, are pre-empted by federal law.

The district court did not analyze the licensing provisions in the Ohio statute under the new preemption standards set out in the Gramm-Leach-Bliley Act, since the Act was not in effect at the time summary judgment was granted. Because that analysis has not been undertaken by the district court, we conclude that the case must be remanded for that limited purpose. The district court should analyze each of the provisions in the Ohio statute individually to determine which, if any, survive the preemptive effect of Gramm-Leach-Bliley.

### CONCLUSION

For the reasons stated above, we hold that the intervenor-defendants do have standing to appeal. Nevertheless, we AFFIRM the district court's grant of summary judgment to the plaintiffs, based on the court's decision that the Ohio insurance statutes at issue in this case are preempted by 12 U.S.C. § 92. However, we further conclude that passage of the Gramm-Leach-Bliley Act, Pub. L. No. 106-102 (1999), may affect the judgment below and REMAND the case for the district court's further consideration under the new Act.

The Ohio legislature must have anticipated that there might be constitutional problems with requiring national banks to comply with the state's foreign corporation licensing laws, because it enacted Ohio Revised Code § 1703.03.1, effective May 21, 1997. That section provides that "[i]f the laws of the United States prohibit, preempt, or otherwise eliminate the licensing requirement of sections 1703.01 to 1703.31 of the Revised Code with respect to a corporation that is a bank, savings bank, or savings and loan association chartered under the laws of the United States," then such bank is required only to file a notice providing certain information such as the name of the corporation and its business address and appointing a designated agent. Even § 1703.03.1 contains some questionable provisions, such as the requirement that the notice be accompanied by a $100 filing fee. However, § 1703.03.1 does not provide for the issuance or revocation of a license, nor does it expressly state that the filing of the notice is a prerequisite for doing business in the state. Although couched in mandatory terms, the statute provides for no mechanism for its enforcement and no consequences for a failure to comply with its terms.

Thus, compliance with § 1703.03.1 is technically not a licensing requirement for becoming "qualified to do business in this state under the applicable provisions of Title XVII" within the meaning of §§ 3905.02(E)(1) and (2) and 3905.18(G)(1) and (2). Since the parties have not fully addressed the extent, if any, to which a national bank would be bound to follow the notice provisions of §1703.03.1, the court will not resolve that issue here. However, the court does conclude that under the Supremacy Clause, national banks would not be bound by the licensing requirements for foreign corporations found in Ohio Revised Code §§ 1703.01 through 1703.31, and that to the extent that those licensing requirements are incorporated into §§ 3905.01(E)(1) and (2) and 3905.18(G)(1) and (2), those sections, insofar as

licensing provisions under the Supremacy Clause of the United States Constitution, U.S. CONST. Art VI, cl. 2. They also sought an injunction to prevent Duryee from enforcing these provisions against national banks to the extent that the provisions were preempted by federal law. Specifically, the plaintiffs argued that § 92 preempts both Ohio's principal purpose test as codified in O.R.C. §§ 3905.02(B), 3905.03(A)(5), 3905.04, 3905.18(C) and (D), and the provisions of O.R.C. §§ 3905.02(E)(1) and (2), 3905.18(G)(1) and (2), and 3905.18(C), to the extent that they condition a national bank's exercise of its § 92 powers on the bank's qualifying to do business in Ohio under the general corporation law, remaining in good standing with the Ohio secretary of state, and organizing for the purpose of acting as an insurance agent.[3]

In conjunction with the plaintiffs' motion for summary judgment, the United States Office of the Comptroller of the

---

States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants . . . may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do said business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company. . . .

12 U.S.C. § 92.

[3]Plaintiffs also challenged O.R.C. § 3953.21(B), which provides:

No bank, trust company, bank and trust company, or other lending institution, mortgage service, brokerage, mortgage guaranty company, escrow company, real estate company or any subsidiaries thereof or any individuals so engaged shall be permitted to act as an agent for a title insurance company.

The defendants agreed that 12 U.S.C. § 92 preempts O.R.C § 3953.21(B), however. The intervenor-defendants do not appeal the district court's grant of summary judgment to plaintiffs on this issue.

Currency submitted a brief as *amicus curiae*, urging the district court to find that the challenged Ohio provisions were preempted because they prevent or impair the ability of national banks to exercise their § 92 powers to sell insurance. Defendant Duryee and the intervenor-defendants filed cross-motions for summary judgment. All of the parties agreed that the issues presented in this case were primarily questions of law and that there were no genuine issues of material fact.

Subsequently, the district court entered summary judgment for the plaintiffs, granting a declaratory judgment and permanently enjoining the superintendent from enforcing the challenged Ohio provisions against national banks located and doing business in towns with 5,000 or fewer inhabitants. The intervenor-defendants now appeal the district court's decision.

## DISCUSSION

### I. *Standing of Intervenors*

As a preliminary matter the plaintiffs argue that the intervenor-defendants lack standing to appeal, on the ground that they do not claim to have been injured by the district court's decision. This question is complicated by the fact that, having declined to appeal the judgment of the district court, the Ohio Superintendent of Insurance apparently does not intend to enforce the provisions of the statute at issue here and instead, we assume, will invoke the alternate provisions of O.R.C. § 1703.03.1. *See infra.*

Permission to intervene in a district court action does not automatically confer standing to appeal. *See Diamond v. Charles*, 476 U.S. 54 (1986). When considering whether the intervenor-defendants have standing to appeal, our focus is on the injury caused by the judgment rather than the injury caused by the underlying facts. *See* 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: § 3902 (2d ed. 1992). "Although the determination of an injury may not always be simple, standing to appeal is recognized if the appellant can show an adverse

3905.18(G)(1) and (2) to condition the licensure of national banks, located and doing business in towns with 5,000 or fewer inhabitants, upon such banks "qualifying and being licensed as a foreign corporation to do business in Ohio," or "remaining in good standing with the Ohio secretary of state."

Claiming error in the district court's ruling, the intervenor-defendants repeat their argument that the Ohio corporate registration requirements would not significantly interfere with a national bank's exercise of its § 92 powers. They also contend that the court's injunction was impermissibly broad. Finally, they argue that the district court's analysis of a few discrete requirements cannot justify preemption of the entire body of corporate registration requirements contained in §§ 1703.01 through 1703.31 of the Ohio Revised Code.

In response, plaintiffs and the OCC argue that a national bank's corporate existence, ability to do business, and good standing are matters of federal standards under the National Bank Act and are not subject to state corporate qualification statutes. They recite a list of federal statutes establishing these federal standards: 12 U.S.C. § 21 (governing formation of national banks and their entry into articles of association); 12 U.S.C. § 21a (governing amendment of articles of association); and 12 U.S.C. §§ 22 and 23 (governing content and filing of a national bank's organization certificate). They also emphasize that 12 U.S.C. § 26 grants the Comptroller of the Currency the authority to determine whether a banking association is "lawfully entitled to commence the business of banking."

The district court agreed and noted that "[g]ranting the authority to determine whether a foreign national bank has exceeded the scope of its authority to the Ohio secretary of state rather than the Comptroller of the Currency, who is charged under federal law with that responsibility, constitutes an unconstitutional impingement on the authority of the Comptroller." The court further observed that:

Sections 3905.18(G)(1) and (2) contain identical provisions, applicable to life insurance agents.

The district court concluded that these registration requirements are more than mere formalities, noting that a national bank falls within Ohio's definition of a "foreign corporation" if its main office is located in another state. *See* O.R.C. § 1703.01(B). In its opinion, the court discussed several of Ohio's requirements for foreign corporations. Among them is the prohibition against a foreign corporation conducting business in Ohio unless it holds a license to do so issued by the secretary of state. *See* O.R.C. § 1703.03. To obtain a license, a foreign corporation must file an application and pay a filing fee of $100. *See* O.R.C. § 1703.04(C). The secretary of state will not issue a license if it appears that the foreign corporation's name is prohibited by law or is indistinguishable from the name of another other corporation doing business in Ohio. *See* O.R.C. § 1703.04(D). A foreign corporation's license can be canceled if it transacts any business in Ohio that could not lawfully be transacted by a domestic corporation. *See* O.R.C. § 1703.15.

The district court found that these provisions constitute "impermissible conditions" upon a national bank's ability to do business in Ohio. In support of its decision, the court cited a 1952 Massachusetts district court decision holding that "[n]either states nor subdivisions thereof have the power to levy license fees on national banks," *Bank of America, Nat'l Trust & Sav. Ass'n v. Lima*, 103 F.Supp. 916 (D. Mass. 1952), and a Maryland circuit court decision holding that "the name of [a national bank] is subject only to the approval of the comptroller of the currency." *Third Nat'l Bank of Baltimore v. Teal*, 5 F. 503 (C.D.C.. Md. 1881). The court also noted that "as the instant case illustrates, there may be instances where a national bank would be authorized to transact business which could not legally under state law be transacted by a domestic corporation." The court, therefore, permanently enjoined the Ohio superintendent of insurance from using O.R.C. §§ 3905.02 (E)(1) and (2) and

effect of the judgment, and denied if no adverse effect can be shown." *Id.*

In this case, regardless of the decision of the Ohio Superintendent of Insurance not to appeal in his own name, the judgment of the district court has the effect of easing restrictions on the entry of national banks into the Ohio insurance arena. Consequently, as potential competitors of those banks, the intervenor-defendants face the threat of economic injury should the Ohio statutory provisions not be enforced. Such threatened injury is sufficient to confer appellate standing on the intervenor-defendants and allows them to challenge the merits of the district court's decision. *See*, *e.g.*, *Kelley v. Selin*, 42 F.3d 1501, 1508 (6th Cir. 1995).

## II. *Applicable Federal Statutes*

As the district court noted in its extensive and well-reasoned opinion:

National banks are brought into existence under federal legislation, and are instruments of the federal government which are subject to the paramount authority of the United States. *M. Nahas Co., Inc. v. First National Bank of Hot Springs*, 930 F.2d 608, 610 (8th Cir. 1991). Thus, it is well established that any state law limiting the operation of national banks is preempted by federal law and invalid under the Supremacy Clause if the state law "expressly conflicts with the laws of the United States, and either frustrates the purpose of national legislation or impairs the efficiency of [national banks] to discharge the duties, for the performance of which they were created." *Davis v. Elmira Savings Bank*, 161 U.S. 275 (1896). Congress may confer power on the states to regulate national banks or may retain that power. *Independent Comm. Bankers Ass'n of South Dakota, Inc. v. Board of Governors of Federal Reserve System*, 820 F.2d 428, 436 (D.C. Cir. 1987). The question is one of congressional intent, that is, did Congress, in enacting the

federal law, intend to exercise its constitutionally delegated authority to set aside the laws of the state? *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280-281 (1987). Absent explicit pre-emption language, courts must consider whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

The Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County, Fla. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824)). Federal law may pre-empt state law where it is in "irreconcilable conflict" with state law. *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). This may occur where compliance with both statutes is an impossibility. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963). Pre-emption is also appropriate where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lawrence County v. Lead-Deadwood School Dist. No. 40-1*, 469 U.S. 256, 260 (1985) (Quoting *Hines v. Davidowitz*, 31 U.S. 52, 67 (1941)).

Where state and federal laws are inconsistent, the state law is pre-empted even if it was enacted by the state to protect its citizens or consumers. As the Supreme Court noted in *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 99 103 (1992), in holding that a state law designated to promote worker safety was preempted:

> In determining whether state law "stands as an obstacle" to the full implementation of a federal law, *Hines v. Davidowitz*, 312 U.S. at 67, "it is not enough to say that the ultimate goal of both federal and state law is the same, *International Paper Co. v.*

## IV.  *Ohio's Corporate Organizational Requirements for Licensure*

Beyond the statutory provisions set out above, the plaintiffs challenged a number of other state law requirements that, they maintain, are preempted under federal legislation. These include, for example, O.R.C. § 3905.18(C), which prevents the superintendent of insurance from issuing a life insurance license without first determining that the applicant "was organized for the purpose of acting as an insurance agent." As the OCC notes in its brief, even though certain national banks are authorized to sell insurance, it cannot be said that they are organized for the purpose of acting as insurance agents. Obviously, the district court was correct in ruling that national banks cannot be made to comply with O.R.C. § 3905.18(C), to the extent that the provision would prevent a national bank from exercising its § 92 powers.

The remaining provisions at issue, O.R.C. §§ 3905.02(E)(1) and (2) and 3905.18(G)(1) and (2), were also held to be preempted by § 92. We conclude that the district court did not err in these rulings either.

Sections 3905.02(E)(1) and (2) apply to other than life insurance agents and provide:

> (1) The superintendent of insurance shall not issue or continue the license of a corporation, partnership, or limited liability company organized under the laws of this or any other state unless the corporation, partnership, or limited liability company is qualified to do business in this state under the applicable provisions of Title XVII [17] of the Revised Code.

> (2) The failure of a corporation, partnership, or limited liability company to be in good standing with the secretary of state or to maintain a valid appointment of statutory agent is grounds for suspension or revocation of its license.

preempted not only under the *Barnett Bank* standards but also under the new nondiscrimination standards laid out in § 104(e) of the Gramm-Leach-Bliley Act. Section 104(e)(2) of the Act, 15 U.S.C. § 6701(e)(2), preempts any state statute that "as interpreted or applied, has or will have an impact on depository institutions, or subsidiaries or affiliates thereof, that is substantially more adverse than its impact on other persons or entities providing the same products or services or engaged in the same activities that are not insured depository institutions, or subsidiaries or affiliates thereof, or persons or entities affiliated therewith." Section 3905.02(B) of the Ohio Revised Code provides that before licensing an applicant to do the business of an other than life insurance agent, the superintendent must be satisfied that "in applying for a license it is not the applicant's purpose or intention principally to solicit or place insurance on the applicant's own property or that of relatives, employers, or employees or that for which they or the applicant is agent, custodian, vendor, bailee, trustee, or payee." As already noted, transactions between a bank and its customers commonly make the bank the "agent, custodian, vendor, bailee, trustee, or payee" of its customers, but these relationships are not routinely created in the general insurance business. It is obvious to us that the impact of § 3905.02(B) on national banks would, therefore, be "substantially more adverse" than the impact of the provision on general insurance agents.

For the reasons stated above, we agree with the district court's decision to grant plaintiffs a declaratory judgment holding that the principal purpose test is preempted by 12 U.S.C. § 92 to the extent that the test is applied to restrict the power of a national bank, located and doing business in a town of 5,000 or fewer inhabitants, to sell insurance. We also affirm the district court's decision permanently to enjoin the Ohio Superintendent of Insurance from enforcing the principal purpose test against such national banks.

*Ouellette*, 479 U.S. 481, 494 (1987). " A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Ibid*.; see also *Michigan Canners & Freezers Assn., Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 477 (1984).

*See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (holding that a state statute allegedly designed to prevent market distortion caused by false advertising of airfares was precluded by federal law pre-empting state regulation of the rates, routes or services of air carriers).

An additional pre-emption doctrine is relevant where the state law in question consists of insurance regulation. Under the provisions of the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b).

. . . .

Pre-emption in the area of national banks may occur even if compliance with both state and federal laws is possible where the state laws "infringe the national banking laws or impose an undue burden on the performance of the banks' functions. *Anderson National Bank v. Luckett*, 321 U.S. 233, 248 (1944). In *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 414 (1982), the Supreme Court found that a state law which prohibited the use of due-on-sale clauses in loan instruments was preempted by a federal regulation that expressly granted to federal savings and loans the power to include such clauses in loan instruments, even though federal law merely permitted

but did not compel; federal savings and loans to include due-on-sale clauses in their contracts.

The Supreme Court recently addressed the issue of pre-emption under § 92 in *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996). In that case, the Court held that § 92 pre-empted a Florida law which prohibited national banks serving small towns from selling insurance policies.

The Court in *Barnett Bank* noted that the statutes did not impose directly conflicting duties on national banks because § 92 merely permitted but did not require national banks to sell insurance. *Id*. at 31. However, the Court stated that the language of § 92 "suggests a broad, not a limited, permission for insurance sales, under the rules and regulations of the Comptroller of the Currency. *Id*. at 32. The Court also referred to previous cases establishing a history of "interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id*. at 32-34. The Court stated that "these cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id*. at 33. States retain the power to regulate national banks only where "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Id*.

. . . .

The Supreme Court in *Barnett Bank* also addressed the issue of whether § 92 fell within the ambit of the McCarran-Ferguson Act's anti-pre-emption rule. The Court held that § 92 "specifically relates" to the business of insurance, and therefore falls within the scope of the "specifically relates" exception to the anti-pre-emption rule. *Id*. at 41.

controlled or actively supervised by a national bank and formed for the purpose of circumventing the requirements of the principal purpose test would in all likelihood be considered the alter ego of the bank."

Furthermore, as the plaintiffs point out, § 92 authorizes the national banks themselves to sell insurance if they are located and doing business in towns of fewer than 5,000 inhabitants. It does not require national banks to sell insurance through subsidiaries. Indeed, the United States Supreme Court specifically noted in *Barnett Bank* that the wording of § 92 "suggests a broad, not a limited permission. That language says without relevant qualification, that national banks 'may . . . act as the agent' for insurance sales." *Barnett Bank*, 517 U.S. at 32.

In sum, we agree with the district court that by preventing national banks from marketing insurance to a significant segment of their customers, the principal purpose test "significantly interferes" with a national bank's ability to exercise its § 92 powers. *See* 15 U.S.C. § 6701(d)(2)(A). This conclusion is also strongly supported by the legislative history of the Gramm-Leach-Bliley Act. In the Senate Report accompanying the bill, the Committee on Banking, Housing, and Urban Affairs noted:

> [An] example of a State law that would be preempted under the standard set forth in subsection 104(d)(2)(A) would be a statute that limits the volume or portion of insurance sales made by an insurance agent on the basis of whether such sales are made to customers of an insured depository institution or any affiliate of the agent. Such a statute would prevent or significantly interfere with the sale of insurance to an insured depository institution's customers.

S. REP. No. 106-44 at 13.

Furthermore, with regard to O.R.C. § 3905.02(B), we conclude that the principal purpose test in this provision is

U.S. at 28-29. They then insist that because the principal purpose test at issue here does not totally prohibit national banks from selling insurance, the test cannot be preempted under federal law.

The intervenors' attempt to redefine "significantly interfere" as "effectively thwart" is unpersuasive, however. In *Barnett Bank*, the Supreme Court held that states may regulate national banks only where doing so does not "prevent or significantly interfere with" the banks' exercise of their powers. *Id.* at 33. The intervenors are asking this court to interpret "significantly interfere" in a way that would render the two prongs of the *Barnett Bank* standard redundant. Moreover, immediately after laying out the "prevent or significantly interfere" standard, the *Barnett Bank* opinion cited two cases that do not support the intervenors' interpretation of the standard. *See McClellan v. Chipman*, 164 U.S. 347, 358 (1896) (considering whether state statute would "impair the efficiency of national banks" or would "destro[y]" or "hampe[r]" national bank's functions); *First Nat'l Bank v. Kentucky*, 76 U.S. 353, 362 (1869) (considering whether state law would "interfere with or impair [national banks'] efficiency in performing the functions by which they are designed to serve [the Federal] government").

The intervenor-defendants also argue that the principal purpose test does not "significantly interfere" with a national bank's exercise of its powers because a national bank can simply set up an affiliate or subsidiary to sell insurance and thereby avoid the impact of the test. They claim that banks in Ohio have "traditionally satisfied" the principal purpose test by exercising this option. National banks are not likely to avoid the principal purpose test by selling insurance through a subsidiary, however. The Supreme Court of Ohio has held that a subsidiary would be prohibited from obtaining a license when that subsidiary is "essentially the alter ego of its parent formed primarily for the purpose of circumventing state law." *See Fabe*, 587 N.E.2d at 817-18. As the district court noted in its opinion, "Under *Fabe*, any subsidiary owned and

On November 12, 1999, some five months after the district court opinion was filed in this case, President Clinton signed into law the Gramm-Leach-Bliley Act, Pub. L. No. 106-102 (1999). The new act creates separate preemption standards for state laws dealing with the sale, solicitation or cross-marketing of insurance and distinguishes between affected state laws adopted before and those adopted after September 3, 1998. *See* SENATE COMM. ON BANKING, HOUSING, AND URBAN AFFAIRS, FINANCIAL SERVICES MODERNIZATION ACT OF 1999, S. REP. NO. 106-44, at 12-13 (1999). The former are subject to preemption under the *Barnett Bank* statutory preemption standards pursuant to § 104(d)(2)(A),[4] and in cases involving these state laws, the OCC is entitled to deference under the principles set out in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[5]

State insurance sales, solicitation, and cross-marketing laws adopted after September 3, 1998, are subject to preemption not only under the *Barnett Bank* standard laid out in § 104(d)(2)(A), but also under a new non-discrimination standard established in § 104(e). *See* S. REP. NO. 106-44 at

---

[4]The Act provides in part as follows:

IN GENERAL – In accordance with the legal standards for preemption set forth in the decision of the Supreme Court of the United States in Barnett Bank of Marion County N.S. v. Nelson, 517 U.S. 25 (1996), no State may, by statute, regulation, order, interpretation, or other action, prevent or significantly interfere with the ability of a depository institution, or an affiliate thereof, to engage, directly or indirectly, either by itself or in conjunction with an affiliate or any other person, in any insurance sales, solicitation, or cross-marketing activity.

15 U.S.C. § 6701(d)(2)(A).

[5]*See generally* Karol K. Sparks, "The State of Bank Insurance Powers After Gramm-Leach-Bliley," SEA1 ALI-ABA 351, 379 (February 3, 2000).

13.  This standard preempts any state statute, regulation, order, interpretation, or other action that:

(1) distinguishes by its terms between insured depository institutions, or subsidiaries or affiliates thereof, and other persons or entities engaged in such activities, in a manner that is in any way adverse to any such insured depository institution, or subsidiary or affiliate thereof;

(2) as interpreted or applied, has or will have an impact on depository institutions, or subsidiaries or affiliates thereof, that is substantially more adverse than its impact on other persons or entities providing the same products or services or engaged in the same activities that are not insured depository institutions, or subsidiaries or affiliates thereof, or persons or entities affiliated therewith;

(3) effectively prevents a depository institution, or subsidiary or affiliate thereof, from engaging in insurance activities authorized or permitted by this Act or any other provision of federal law; or

(4) conflicts with the intent of this Act generally to permit affiliations that are authorized or permitted by federal law between insured depository institutions, or subsidiaries or affiliates thereof, and persons and entities engaged in the business of insurance.

15 U.S.C. § 6701(e).  The standard for legal review of these state statutes is "without unequal deference." *See* 15 U.S.C. § 6714(e).

### III.  *Ohio's Principal Purpose Test*

Ohio's "principal purpose test" is codified in O.R.C. §§ 3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D).  These statutes authorize Ohio's Superintendent of Insurance to deny or revoke an insurance license upon determining that the principal purpose of the license is or has

customers commonly make the bank the "agent, custodian, vendor, bailee, trustee, or payee" of its customers, these relationships are not routinely created in the general insurance business.

Indeed, the plaintiffs claim that the principal purpose test should be preempted precisely because it would prevent national banks from marketing insurance products primarily to their own customers.  They contend that in preventing national banks from marketing insurance to a significant segment of this, their most logical market, the principal purpose test would "significantly interfere" with a bank's exercise of its § 92 powers under the preemption standards laid out in *Barnett Bank*.  They also argue that as a practical matter, the principal purpose test would force national banks to set up a costly and burdensome tracking system to determine whether a potential insurance sale fell within the restricted categories.

It is certainly true that under the Ohio Attorney General's opinion, a national bank's customers are very likely to fall within one of the restricted statutory classes.  To comply with Ohio law, a national bank would, therefore, have to limit its business with many if not most of its customers until it could generate sufficient business outside this restricted customer base to stay below the 51 percent range.  And if a national bank is unable to sustain sufficient outside business, it would have to reduce its business with its own customers to ensure that it collects less that 51 percent of its premiums from them.  The test would also inevitably impose administrative costs on national banks.

The intervenor-defendants contend, however, that under *Barnett Bank*, the principal purpose test should not be considered to "significantly interfere" with a national bank's exercise of its § 92 powers unless it "essentially thwarted" the bank's exercise of its powers.  They emphasize that in *Barnett Bank*, the state statute at issue totally prohibited affiliated national banks from selling insurance.  *See Barnett Bank*, 517

insurance.[7]   Because § 3905.02(B) was adopted after September 3, 1998, it is subject to preemption both under the traditional *Barnett Bank* standards and the new non-discrimination standards laid out in § 104(e) of the Gramm-Leach-Bliley Act.

On appeal, the intervenor-defendants emphasize that Ohio's principal purpose test was enacted as a consumer protection regulation. The superintendent of insurance has explained that the test was "undoubtedly intended to prevent an unfair advantage in the placing of insurance and the licensing of persons who were not intending to do a general insurance business, but simply to supplement their primary business." The intervenor-defendants argue that the plaintiffs object to the application of the principal purpose test because it operates precisely as the Ohio legislature intended; it prevents national banks from capturing business that they effectively control without subjecting their insurance products to the rigors of competition. They claim that allowing national banks to shield their insurance products from competition would lead to higher prices and unsound consumer purchasing decisions. But, as noted above, the fact that the state legislature enacted the principal purpose requirement to protect general insurance agents and consumers does not, for that reason alone, preclude federal preemption.

The intervenor-defendants also argue that the principal purpose test is a law of general application that in no way discriminates against national banks. The plaintiffs insist, however, that the test does discriminate against national banks. They emphasize that the admitted goal of the test is to discourage the licensing of those who, like national banks, do not intend to engage in the general insurance business, but seek instead to supplement their primary business. They also emphasize that although transactions between a bank and its

---

[7]Although § 3905.02(B) did not come into effect until October 1, 1998, the principal purpose test, itself, has been in existence since at least the 1940s.

been to solicit or place insurance on the property or lives of persons in certain prohibited categories.

For example, §§ 3905.18(C) and (D) concern licenses to sell life insurance. Section 3905.18(C) provides in relevant part:

> Upon written notice by a life insurance company authorized to transact business in this state of its appointment of a corporation, partnership, or limited liability company to act as its agent in this state, the superintendent of insurance shall furnish such corporation, partnership, or limited liability company with an application for an agent's license which shall contain such questions as will enable the superintendent to determine . . . that in applying for such license it is not the appointee's purpose or intention principally to solicit or place insurance on the lives of the appointee's officers, employees, or shareholders, or the lives of persons for whom they, their relatives, or the appointee is agent, custodian, vendor, bailee, trustee, or payee.

Section 3905.18(D) authorizes the superintendent of insurance to suspend or revoke the license of a life insurance agent after a hearing, if the superintendent finds that the principal use of the license has been to "solicit, place, or effect" insurance on the lives of persons in the categories enumerated in § 3905.18(C).

Sections 3905.02(B), 3905.03(A)(5) and 3905.04 concern licenses to sell insurance other than life insurance. Section 3905.02(B) provides in relevant part:

> The superintendent of insurance shall issue to an applicant a license that states in substance that the person is authorized to do the business of an other than life insurance agent in this state, if the superintendent is satisfied that . . . in applying for a license it is not the applicant's purpose or intention principally to solicit or place insurance on the applicant's own property or that of

relatives, employers, or employees or that for which they or the applicant is agent, custodian, vendor, bailee, trustee, or payee.

Section 3905.03 governs the appointment of solicitors employed by insurance agents licensed under § 3905.02. Under § 3905.03(A)(5), the superintendent of insurance will not issue an appointment to the solicitor unless satisfied that it is not the "solictor's purpose or intention principally to solicit or place insurance" on the solicitor's own property or on the property of persons in the prohibited categories, listed in § 3905.02 above. In pertinent part, § 3905.04 instructs the superintendent: (1) to deny a license to an agent or solicitor or (2) to revoke the license of an agent or solicitor when satisfied that the principal use of the license has been or is "to procure, receive, or forward applications for insurance of any kind, other than life, or to solicit, place or effect such insurance directly or indirectly upon or in connection with the property" of such agent or solicitor or that of persons in the prohibited categories laid out in the excerpt of § 3905.02(B) above.

The Ohio Department of Insurance enforces the "principal purpose" requirement in part through a numerical percentage test. The superintendent will presume that an agent is violating the principal purpose requirement if the agent's sales to persons within one or more of the restricted classes amounts to 51 percent or more of the total premium volume for any one calendar year. *See, e.g., Indep. Ins. Agents of Ohio, Inc. v. Fabe,* 587 N.E.2d 814, 816 (Ohio 1992) (describing the principal purpose test). To rebut this presumption, the agent must establish that it is not targeting customers in the restricted classes. Instead, according to the intervenor-defendants' brief, it must show that "it is engaging in a *bona fide* agency business -- that it is making its insurance services available to a wide range of customers and not solely to its existing non-insurance customers – even though it happens to have greater success (i.e. better than 51 percent) in selling insurance to its existing 'enumerated customers.'"

An advisory opinion issued by the Ohio Attorney General that deals in part with the principal purpose requirement describes the types of relationships between a bank and its customers that would make the bank the "agent, custodian, vendor, bailee, trustee, or payee" of its customers. *See* 1988 Op. Atty. Gen. 88-036, 1988 Ohio AG LEXIS 47-53. According to the opinion, banks are "payees (e.g. mortgagees) of persons to whom they extend credit." *Id.* at 48-49. The opinion also explains that a bank is a "trustee" when it exercises its trust powers; a "bailee" and "custodian" when it provides safety deposit boxes for its customers' property; an "agent" when it is designated to act in that capacity on behalf of persons for whom the bank provides financial services; and "arguably" a "vendor" when selling certificates of deposit, money market certificates, corporate securities, bonds, promissory notes, and other investment instruments. *See id.* at 49-53. The attorney general further notes that the relationship between a bank and its general depositors is widely considered to be a debtor-creditor relationship. *See id.* at 53.

Several of the Ohio provisions implementing the principal purpose test were adopted before September 3, 1998: §§ 3905.18 (C) and (D), (concerning licenses to sell life insurance); § 3905.03(A)(5) (concerning the appointment of solicitors to represent insurance agents);[6] and § 3905.04 (authorizing the superintendent to deny or revoke the license of an agent or solicitor who has failed the test). Under the Gramm-Leach-Bliley Act, these statutes are subject to preemption under the standards laid out in *Barnett Bank.* 15 U.S.C. § 6701(d)(2)(A).

Section 3905.02(B) became effective on October 1, 1998, however. This section lays out the standards for licensing insurance agents in all branches of insurance except life

---

[6] Section 3905.03(A)(5) is the former § 3905.02, amended and recodified by 1998 S 154, effective 10-1-98. Both the new and old versions of the statute contain the principal purpose test.