Shannon M. ABEL, individually, and on behalf of those similarly situated, et al., Plaintiffs,

v.

KEYBANK USA, N.A., et al., Defendants.

No. 03 CV 524.

United States District Court, N.D. Ohio, Eastern Division.

March 4, 2004.

Christopher C. Casper, James, Hoyer, Newcomer & Smiljanich, J. Daniel Clark, Scott Charlton, Clark, Charlton & Martino, Tampa, FL, Edgar C. Gentle, III, Mary Frances Fallaw, Gentle, Pickens, Eliason & Turner, Birmingham, AL, Ronald L. Burdge, Burdge Law Office, Dayton, OH, for Plaintiffs.

Brian J. Lamb, Jennifer Mingus Mountcastle, Thompson Hine, Cleveland, OH, C. Lee Reeves, Christopher A. Bottcher, Sirote & Permutt, Birmingham, AL, Courtney Worcester, Nixon Peabody, Manchester, NH, W. Scott O'Connell, Nixon Peabody, Boston, MA, for Defendants.

*Memorandum of Opinion and Order*

GAUGHAN, District Judge.

### INTRODUCTION

This matter is before the Court upon Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended and Consolidated Complaint (Doc. 45). This case arises out of loan documents issued by defendant Key Bank in connection with plaintiffs' student loans. For the reasons that follow, defendants' Motion is GRANTED.

### FACTS

Plaintiffs, Shannon M. Abel, Bradley S. Phillips and Laura L. Murphy[1], bring this class action lawsuit against defendants, KeyBank USA, N.A. (hereafter "Key"), JP Morgan Chase Bank (hereafter "JP Morgan") and Bank One National Banking Association (hereafter "Bank One") asserting wrongdoing in connection with the issuance of plaintiffs' student loans.

For purposes of ruling on defendants' Motion, the facts asserted in the Second Amended and Consolidated Class Action Complaint and Demand for Jury Trial ("Amended Complaint") are presumed true.

Plaintiffs are former students of Solid Computer Decisions (hereafter "SCD"). (Compl.¶ 6). Plaintiffs each entered into a student enrollment contract with SCD that contained certain financial terms and disclosures related to student loans. The enrollment contract is a standardized, preprinted form contract. (Compl.¶ 12b). Thereafter, SCD, on behalf of Key, presented a promissory note issued by Key. (Compl.¶ 12c). SCD employees received training and instructions from Key with regard to the issuance of the promissory

---

**1.** Cheryl M. Pohl, a plaintiff in the first amended compliant, is not named as a plaintiff in the second amended complaint.

notes. (Compl.¶ 12c). During the transaction, SCD received credit applications and presented Key documents to students. (Compl.¶ 12e).

Ultimately, plaintiffs' student loans were closed and Key disbursed the funds to SCD as payment for plaintiffs' tuition. (Compl.¶¶ 16, 22, 28). Prior to plaintiffs' completion of the training program, SCD closed for business. Key, however, refused to refund or release plaintiffs from their repayment obligations.

The first amended complaint contained five claims. Count one asserted a claim for violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. (hereafter "TILA") and Regulation Z, 12 C.F.R. Pt. 226. Count two asserted a claim for derivative liability under the Ohio Consumer Sales Practices Act. Count three claimed violation of Ohio's Retail Installment Sales Act, O.R.C. § 1317, et seq. (hereafter "RISA"). Counts four and five asserted claims for unjust enrichment and civil conspiracy, respectively. Defendants filed a motion to dismiss the complaint. In a Memorandum of Opinion and Order dated September 24, 2003, this Court dismissed counts two, four and five, as well as a portion of count one. The court denied defendants' motion to the extent count one is based on Key's alleged failure to properly disclose the annual percentage rate of the loans at issue. In addition, the Court denied defendants' motion with respect to count three, the alleged violation of Ohio's RISA. The Court, however, ordered plaintiffs to file a more definite statement as to this claim. In response, defendants filed the Amended Complaint. The Amended Complaint asserts two claims for relief. Count one is a claim for violation of TILA. Count two asserts a claim for violation of RISA.

Defendants move to dismiss count two on the grounds that the National Bank Act preempts RISA. Plaintiffs oppose defendants' motion.

## STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1999). The complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman (In Re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

"In practice, a...complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984)). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson–Madison County General Hospital District*, 101 F.3d 702, 1996 WL 678233 (6th Cir. 1996), *unpublished.* Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489–490 (6th Cir.1990).

## DISCUSSION

Defendants argue that the National Bank Act, 12 U.S.C. § 24 (Seventh), preempts RISA and, accordingly, that claim must be dismissed. Plaintiffs claim that RISA is a consumer protection statute that is not preempted by the National Bank Act.

### 1. Preemption Standards

██ Preemption may occur in three ways. "It is well established that within Constitutional limits Congress may preempt state authority by so stating in express terms." *Pacific Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)(*citing Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)). Absent express preemptive language, "courts must consider whether the federal statute's 'structure and purpose,' or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)(*citing Jones*, 430 U.S. at 525, 97 S.Ct. 1305). This type of preemption is commonly referred to as "field preemption" and occurs when regulation by the federal government in a particular area is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *American Bankers Ass'n v. Lockyer*, 239 F.Supp.2d 1000, 1008 (E.D.Cal.2002)(*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). The third form of preemption is "conflict preemption." Conflict preemption exists where the federal law is in "irreconcilable conflict" with state law. *Barnett Bank*, 517 U.S. at 31, 116 S.Ct. 1103.

A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility...,'

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where the state 'law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.' *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).

██ It is well established that, in addition to actions taken by Congress, federal regulations enacted by federal agencies may preempt state law. *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Id.* at 153–54, 102 S.Ct. 3014 (*citing United States v. Shimer*, 367 U.S. 374, 381–82, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961)). In such a case, "the court's inquiry is similarly limited,"

If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

*Fidelity Federal*, 458 U.S. at 154, 102 S.Ct. 3014 (*quoting Shimer*, 367 U.S. at 383, 81 S.Ct. 1554).

### 2. Analysis

██ In this case, plaintiffs assert a claim pursuant to RISA Sections 1317.032(A) and (C). Section 1317.032(A) provides,

(A) A buyer who is entitled to assert in an action in connection with a consumer transaction any of the following defenses against the seller of goods or services that are obtained pursuant to a purchase money loan installment note or retail installment contract may also assert the defense against the holder, assignee, or transferee of the [note or contract], whether or not any notice of potential claims and defenses is included in the note or contract:

(1) That the subject of the consumer transaction was not furnished or delivered by the seller in accordance with the agreed upon terms of the transaction;

\* \* \* \* \* \*

(4) That the subject of the consumer transaction did not conform to any express or implied warranty made by the seller; [2]

\* \* \* \* \* \*

In addition to preserving these defenses as against holders in due course, O.R.C. § 1317.032(C) allows a consumer to assert these defenses as affirmative claims against any subsequent holder, provided certain conditions are met.

Defendants argue that the National Bank Act, 12 U.S.C. § 24 (Seventh) preempts plaintiffs' RISA claim. That statute provides, in part,

Upon duly making and filing articles of association and an organization certificate a national banking association shall...have the power-

Seventh. To exercise...all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidence of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by

obtaining, issuing, and circulating notes according to the provisions of title 62 of the Revised Statutes.

12 U.S.C. § 24 (Seventh).

Defendants do not argue that the National Bank Act or any federal regulation expressly preempts RISA. Nor do defendants argue that Congress has "occupied the field" with regard to national banking. Rather, it appears that defendants claim only that the RISA provisions at issue conflict with the National Bank Act. Specifically, Defendants argue that plaintiffs' RISA claim must be dismissed because it impermissibly interferes with the ability of national banks to negotiate promissory notes, lend money and collect on outstanding loans, powers specifically granted by the National Bank Act. Defendants also argue that regulations recently enacted by the Office of the Comptroller of Currency (hereafter "OCC") demonstrate the federal government's intent to preempt state laws such as RISA.

Plaintiffs argue that RISA is a consumer protection statute and that, historically, such policing powers have been left to the states. Plaintiffs further argue that RISA does not regulate the manner or conduct of national banks, nor does it alter the way national banks conduct business in Ohio. As such, plaintiffs claim that defendants fail to establish that RISA obstructs the ability of national banks to exercise their federally granted powers.

"National banks are instrumentalities of the federal government created for a public purpose, and as such necessarily subject to the paramount authority of the United States." *McClellan v. Chipman,* 164 U.S. 347, 356, 17 S.Ct. 85, 41 L.Ed. 461 (1896). "Whatever may be the history of federal-state relations in other fields, regulation of banking has been one of dual

---

**2.** These defenses are the only two asserted by plaintiffs in their complaint.

control since the passage of the first National Bank Act in 1863." *National State Bank v. Long,* 630 F.2d 981, 985 (3d Cir. 1980). Yet, "[s]tate attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties." *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 561 (9th Cir.2002)(*quoting First Nat'l Bank v. California,* 262 U.S. 366, 369, 43 S.Ct. 602, 67 L.Ed. 1030 (1923)). "The supremacy of the federal government in regulating national banks has long been recognized." *Bank of America,* 309 F.3d at 561 (citations omitted). Although Congress may confer power on the states to regulate national banks, Congress may also choose to retain that power. *Association of Nat'l Banks in Ins., Inc. v. Duryee,* 270 F.3d 397, 403 (6th Cir.2001)(*citing Independent Comm. Bankers Ass'n of South Dakota, Inc. v. Board of Governors of Federal Reserve System,* 820 F.2d 428, 436 (D.C.Cir.1987)). "This question is basically one of Congressional intent. Did Congress, in enacting the [federal law], intend to exercise its constitutionally delegated authority to set aside the laws of a state?" *Barnett Bank,* 517 U.S. at 30, 116 S.Ct. 1103. The fact that compliance with both federal and state law is possible does not prevent federal preemption where "the state laws 'infringe the national banking laws or impose an undue burden on the performance of the banks' functions.'" *Id.* at 404 (*citing Anderson National Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 88 L.Ed. 692 (1944)).

In *Barnett Bank,* the Supreme Court addressed whether a Florida statute prohibiting banks from acting as insurance agents in towns with less than 5000 people was preempted by a provision in the National Bank Act providing that banks "may" act as an agent for an insurance company. The federal statute provided, in relevant part,

> In addition to the powers now vested by law in national [banks] organized under the laws of the United States any such bank located and doing business in any place [with a population]...[of not more than] five thousand...*may,* under such rules and regulations as may be prescribed by the Comptroller of Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State...to do business [there], ... by soliciting and selling insurance....

*Barnett Bank,* 517 U.S. at 28, 116 S.Ct. 1103 (citing 12 U.S.C. § 92).

In holding that the Florida statute was preempted, the Court first noted that "the Federal Statute's language suggests a broad, not a limited, permission." *Id.* at 32, 116 S.Ct. 1103. In addition, the statute provided that the rules and regulations governing a bank's ability to act as an insurance agent are those imposed by the Comptroller of Currency, not the state. *Id.* The Court also found support for its conclusion based on Congress's use of the word "powers" in the statute. The Court concluded that "[i]n using the word 'powers,' the statute chooses a legal concept that, in the context of national bank legislation, has a history. That history is one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id.*

Prior to *Barnett Bank,* the Supreme Court addressed several other state banking regulations and found them to be preempted by federal law. For example, in *Franklin National Bank of Franklin Square v. People of the State of New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954), the Court struck down a state stat-

ute that prohibited banks, other than state charter savings banks, from using the word "savings" in their advertising or business as preempted by the National Bank Act and the Federal Reserve Act. Notably, the state did not object to national banks taking savings deposits. *Id.* at 378, 74 S.Ct. 550. In finding that the statute was nonetheless preempted, the Court pointed out that the National Bank Act specifically grants national banks the power to receive deposits as well as "all such incidental powers as shall be necessary to carry on" this function. *Id.* at 376, 74 S.Ct. 550. The Court then concluded that regardless of the benefits the state statute afforded consumers, it was in "clear conflict" with the rights afforded to national banks by Congress under both the National Bank Act and the Federal Reserve Act.[3] *Id.* at 378, 74 S.Ct. 550. *See also Tiffany v. National Bank of Missouri,* 85 U.S. 409, 18 Wall. 409, 21 L.Ed. 862 (1873) (state statute limiting interest rate preempted by National Bank Act).

The Sixth Circuit has also addressed preemption of state laws affecting national banks. In *Duryee,* a group of national banks and associations whose members are composed of national banks brought suit against the Ohio superintendent of insurance arguing that Ohio's "principal purpose test" was preempted by the same provision of the National Bank Act at issue in *Barnett Bank.*[4] *Duryee,* 270 F.3d 397. The "principal purpose test" precluded entities whose "principal purpose" was to sell insurance in certain restricted categories. In essence, the state restrictions prohibited national banks from selling certain types of insurance primarily to their own customers. Thus, to comply with the state law "a national bank would...have to limit

its business with many if not most of its customers until it could generate sufficient business outside this restricted customer base...." *Id.* at 408–09.

Defendants argued that, unlike the state statute at issue in *Barnett Bank,* the Ohio statute does not wholly preclude national banks from selling insurance. Because it merely places limits on national banks, the statute is not preempted. The Sixth Circuit rejected this argument holding,

> The intervenors' attempt to redefine 'significantly interfere' as 'effectively thwart' is unpersuasive, however. In *Barnett Bank,* the Supreme Court held that states may regulate national banks only where doing so does not 'prevent or significantly interfere with' the banks exercise of their powers. The intervenors are asking this court to interpret 'significantly interfere' in such a way that would render the two prongs of the *Barnett Bank* standard redundant.

*Id.* at 409.

Thus, the Sixth Circuit held that the fact that the statute did not entirely preclude national banks from selling insurance is, by itself, an insufficient basis to deny preemption. Rather, the court went on to determine whether the Ohio statute "significantly interferes" with a banks ability to exercise its powers under 12 U.S.C. § 92. The court held, "we agree with the district court that by preventing national banks from marketing insurance to a significant segment of their customers, the principal purpose test 'significantly interferes' with a national bank's ability to exercise its § 92 powers." *Id.* at 410.

On the other hand, in *McClellan,* 164 U.S. 347, 17 S.Ct. 85, 41 L.Ed. 461, the

---

**3.** The analysis of preemption under the Federal Reserve Act mirrored that of the National Bank Act.

**4.** The Sixth Circuit concluded that the state restrictions were preempted by the *Barnett Bank* standards, as well as under Section 104(e) of the Graham Leach Bliley Act.

Supreme Court held that a state law prohibiting certain preferential transfers was not preempted by a federal statute allowing national banks to hold real estate conveyed to it in satisfaction of debt. Following *McClellan,* the Supreme Court analyzed whether a Kentucky statute allowing for a transfer of abandoned bank deposits to the State Department of Revenue was preempted by the National Bank Act. *See Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). In finding the state statute valid, the Court noted "under the statute, the state merely acquires the right to demand payment of the accounts in place of the depositors.... [A]n inseparable incident of a national bank's privilege of receiving deposits is its obligation to pay them to the persons entitled to demand payment according to the law of the state where it does business." Because the statute merely defined the identity of the individual entitled to receipt of the money, the Court concluded that the statute did not impose an undue burden on national banks. *See also First Nat'l Bank in Plant City, Florida, v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969) (state statute was not inconsistent with federal law, which expressly recognized state law limitations).

Upon review of the RISA provisions at issue in this case, as well as the relevant preemption law, the Court finds that the National Bank Act and the corresponding federal regulations preempt RISA. In essence, the RISA provisions read into each promissory note (arising from a consumer transaction) a requirement that any holder, including a national bank, assume the liability of the seller under certain circumstances. The Court finds that this type of state imposed liability significantly interferes with a national bank's ability to negotiate promissory notes and lend money. As defendants point out, the RISA provision essentially requires national banks to become insurers for sellers vis a vis consumers. This will undoubtedly have a significant impact on the value of promissory notes issued in Ohio because such notes will likely be worth less than similar notes issued in states that do not impose RISA type liability.[5] Moreover, RISA will significantly impair the ability of the national bank to collect money on promissory notes that qualify for RISA protection.

The Court finds that recent revisions to the Code of Federal Regulations support this Court's conclusion and evidence federal intent to preempt state statutes such as RISA. The OCC is the federal agency charged with implementing federal banking regulations. On January 13, 2004, the OCC enacted federal regulations specifically addressing federal preemption of state banking laws. These regulations were enacted, in part, due to that fact that "the trend at the [s]tate and local levels toward enacting legislation that seeks to impose costly and inconsistent compliance burdens on national banks has accelerated." *Testimony of Julie L. Williams Before the Subcommittee on Oversight and Investigations of the Committee on Financial Services of the U.S. House of Representatives* (January 28, 2004) (testimony of Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel Office of the Comptroller of the Currency)(hereafter "Williams Testimony") at 10. These preemption regulations provide, in relevant part,

§ 7.4008 **Lending.**

(a) *Authority of national banks.* A national bank may make, sell, purchase,

---

5. The Court notes that RISA applies to *any* holder or assignee of a promissory note, not simply the original maker.

participate in, or otherwise deal in loans...subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency and any other applicable Federal law.

\* \* \* \* \* \*

(c) *Unfair and deceptive practices.* A national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), and regulations promulgated thereunder in connection with loans made under this § 7.4008.

(d) *Applicability of state law.*

(1) Except where made applicable by Federal law, state laws that obstruct, impair or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.

(2) A national bank may make non-real estate loans without regard to state law limitations concerning:

\* \* \* \* \* \*

(iv) The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term of maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

\* \* \* \* \* \*

(e) *State laws that are not preempted.* State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:

(1) Contracts;

(2) Torts;

(3) Criminal law;

(4) Rights to collect debts;

(5) Acquisition and transfer of property;

(6) Taxation;

(7) Zoning; and

(8) Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section.

The Court finds that Section 7.4008(d)(2)(iv), which indicates that national banks may lend money without regard to state laws imposing requirements as to the terms of credit, supports this Court's conclusion that the federal government intended to preempt statutes such as RISA, which essentially impose credit terms concerning defenses to repayment.

Plaintiffs point out in a footnote that the federal regulations specifically indicate that a variety of state laws do apply to national banks. The Court notes, however, that these state laws apply only to the extent that they "incidentally affect" the lending activities of national banks. As set forth above, this Court has concluded that RISA more than "incidentally" affects the lending activities of national banks. Moreover, plaintiffs do not develop any argument on this point and, instead, simply set forth the contents of the provision.

The Court further rejects plaintiffs' argument that RISA is not preempted because it is a consumer protection statute. Although RISA is a consumer protection statute that may have the laudable goal of protecting consumers, preemption is not precluded on this ground. "Where state and federal law are inconsistent, the state law is pre-empted even if it was enacted by the state to protect its citizens or consumers." *Duryee,* 270 F.3d at 404. Moreover,

as the Williams Testimony indicates, the OCC considered the effect the new regulations would have on state consumer protection laws,

> It is simply not the case that consumers will be hurt by our rules. National banks and national bank operating subsidiaries are subject to extensive Federal consumer protection laws and regulations, administered and enforced by the OCC. OCC examinations of national banks and national bank operating subsidiaries are conducted to ensure and enforce compliance with these laws and regulations and supplemental OCC supervisory standards.
>
> \*   \*   \*   \*   \*   \*
>
> Of course, nothing in the OCC's preemption or visitorial powers rules prevents States from applying State standards and taking actions *against the entities they supervise and regulate.* Indeed, resources would be deployed more efficiently to protect more consumers if *States applied their resources to the conduct of State supervised entities,* the OCC applied its resources to national banks, and State officials referred problems involving national banks that come to their attention to the OCC.

(Williams Testimony at 18–19) (emphasis altered from original).

The Court finds that this testimony, which directly addresses state consumer protection statutes, indicates at least in a general sense, the federal government's intent to preempt state consumer protection laws by enacting the revisions to the federal regulations. The Court finds that this testimony further supports the Court's conclusion that RISA is preempted by the

National Bank Act and the corresponding federal regulations.[6]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended and Consolidated Complaint.

IT IS SO ORDERED.

---

**6.** The Court notes that the revision to § 7.4008 also includes a provision that prohibits national banks from engaging in certain deceptive trade practices, as defined by federal law. Neither party argues whether this provision preempts RISA and, as such the Court will not address this argument. Moreover, the Court need not address defendants' argument, made in a footnote, that RISA is essentially an "end run" around the FTC Holder Rule.