Erica L. LUNSFORD and Terry L. Lunsford, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

WOODFOREST NATIONAL BANK and Woodforest Bank, Defendants.

Civil Action No. 1:12–CV–103–CAP.

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 12, 2013.

Edward Adam Webb, G. Franklin Lemond, Jr., Matthew C. Klase, Webb, Klase & Lemond, LLC, Atlanta, GA, for Plaintiffs.

Elliott C. Mogul, Laura J. Butte, Michael A. Johnson, Arnold & Porter, LLP, Washington, DC, Jake R. Miller, Laurence J. Hutt, Nicholas O. Kennedy, Arnold & Porter, LLP, Los Angeles, CA, Eric Jon Taylor, Rebeccah L. Bower, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA, for Defendants.

### ORDER

CHARLES A. PANNELL, JR., District Judge.

This matter is before the court on the defendants' motion to strike the plaintiffs' class action allegation [Doc. No. 8–1] and the defendants' motion to dismiss [Doc. No. 8–2].

## I.  Factual Background

For purposes of the defendants' motions to strike and dismiss, the court considers the following facts the plaintiffs allege as true:

This is a civil action seeking monetary damages, restitution, and declaratory relief from the defendants Woodforest National Bank and Woodforest Bank (collectively "Woodforest"), arising from the assessment and collection of excessive overdraft fees. Woodforest National Bank is a privately held bank headquartered in The Woodlands, Texas.  It operates several branch locations in Georgia, and does business in the state under the name Woodforest Bank. Woodforest is among the nation's largest full-service in-store banks with in-store branches in Wal–Mart, Kroger, Tom Thumb, and Sam's Club stores.  As one of the largest privately owned banks in the United States, with over $3.2 billion in assets, Woodforest—through approximately 750 branches in seventeen states—provides commercial and retail banking services to customers.  The named plaintiffs are North Carolina residents who maintained a checking account with Woodforest and suffered from the alleged overdraft fee injuries at issue in this case.

Woodforest provides its customers with a variety of banking products and services. Customers who open a checking account are given a debit card, also known as a check card or ATM card.  Through such debit cards, customers can engage in transactions using funds which are withdrawn from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically.  As a result, Woodforest is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

Woodforest employs sophisticated software called "PrivilegePay" to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer by manipulating and reordering debits from highest to lowest during given periods of time.  Woodforest utilizes this sophisticated software system to generate overdraft fees. Customers at all Woodforest branches suffered from the same policies and systems under the bank's PrivilegePay program.  As a result of Woodforest's manipulation and

alteration of customers' transaction records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.

Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur. For example, if a customer, whose account has a $50 balance at the time Woodforest posted several transactions, made four transactions of $10 and then one subsequent transaction of $100, the defendants would reorder the debits from largest to smallest, imposing four overdraft fees on the customer. Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.

The plaintiffs and all members of the class maintain or maintained a checking account with Woodforest. The terms of the bank's checking accounts are contained in standardized account holder agreements—presented to its customers on a "take it or leave it" basis—drafted and imposed by Woodforest.

Until required to do so by federal regulators in 2010, Woodforest failed to disclose to customers that they had the option to "opt out" from the defendants' "PrivilegePay" overdraft scheme. The bank's account agreement does not adequately disclose Woodforest's improper reordering and overdraft assessment practices described herein.

## II.   The Defendants' Motion to Strike

The defendants have moved to strike the plaintiffs' class action allegations for failing to meet the requirements for class certification under Federal Rule of Civil Procedure 23. The plaintiffs have not yet moved for class certification, and the parties have not completed discovery. Nevertheless, the defendants ask the court to consider the merits of the plaintiffs' class allegation at this time.

■ Class certification is governed by Federal Rule of Civil Procedure 23. Subsection (a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as "the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Rule 23(b) provides that, in addition to the Rule 23(a) prerequisites, a class must fall into one of three categories: (1) the pursuance of separate actions would create a risk of inconsistent verdicts or would, as a practical matter, make individual adjudications dispositive of the interests of class members who are nonparties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3) questions of law or fact common to members of the class predominate over issues affecting individual members, and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy. Generally, the burden is on the plaintiff to make the requisite showing for class certification. Here, however, the defendants have moved to strike the class allegation prior to the plaintiffs moving for certification; therefore the burden is on them to show that the alleged class cannot meet the requirements of Rule 23.

■ Here, the defendants argue that the court should strike the plaintiffs' class allegation at this early stage because the number of states' laws that could be involved creates a manageability problem, running afoul of

the requirements of the commonality prong of the Rule 23 standard. To satisfy the commonality requirement, the plaintiffs must show that there are questions of law or fact common to the entire class. Fed.R.Civ.P. 23(a)(2). It is not necessary that all questions of law and fact be common. *National Broadcasting Co. v. Cleland,* 697 F.Supp. 1204, 1216 (N.D.Ga.1988); *Strube v. American Equity Investment Life Insurance Co.,* 226 F.R.D. 688, 695 (M.D.Fla.2005), but common questions "must predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).

The defendants argue that the state laws underlying the plaintiffs' four causes of actions—breach of contract from breach of the implied covenant of good faith and fair dealing,[1] unconscionability, conversion, and unjust enrichment—vary "significantly and materially in their substance" making it impossible for the parties and the court to create a manageable trial plan. In response, the plaintiffs contend that the defendants' motion to strike is premature because the parties have not even begun discovery and the plaintiffs have not formulated their petition for class certification. They argue that discovery will reveal solutions to the manageability problem, including the possibility of creating subclasses that group together class plaintiffs from states with substantially similar laws, an option under Federal Rule of Civil Procedure 23(c)(5). Finally, the plaintiffs argue that a class action is the only viable mechanism to have these claims adjudicated because the individual claims are relatively small ($34 for each overdraft fee).

While the court is obviously receptive to the defendants' argument about trial manageability, the court finds a recent class certification decision from a nearly identical case currently being litigated in the United States District Court for the Southern District of Florida as part of a Multidistrict Litigation procedure persuasive on precisely this issue. The Multidistrict Litigation is styled *In re Checking Account Overdraft Litigation,* MDL No. 2306 and involves class action suits against fifteen national banks for the same or substantially the same claims the plaintiffs have brought against the defendants here.

The court in the Southern District of Florida recently certified a class action suit against Comerica Bank, *In re Checking Account Overdraft Litigation,* 286 F.R.D. 645 (S.D.Fla.2012) (hereinafter *Comerica* ),[2] and while not binding on this court, it is nonetheless a highly persuasive blueprint for how cases such as these can successfully be certified as class actions. In *Comerica,* the plaintiffs created an extensive trial plan that illustrated variations in state law that the court would need to apply and delineated five subclasses that, in the court's words, make the case "eminently manageable as a class action." *In re Checking,* 286 F.R.D. at 659.

Because the claims, issues, laws, and alleged facts here are nearly identical to those raised in the *Comerica* case cited above and many if not all of the other checking account overdraft cases that are included in the Multidistrict Litigation, the court concludes that the defendants' motion to strike is premature. The plaintiffs should be given the chance to follow the evidentiary, conflict of laws, and trial plan that the plaintiffs in *Comerica* (or a separate, equally satisfactory method for developing a petition to certify the class) as a blueprint for overcoming the defendants' claim of unmanageability.

Accordingly, the defendants' motion to strike [Doc. No 8–1] is DENIED.

---

1. The defendants treat this as two separate causes of action, but for purposes of this motion the court will construe the claim in the manner the plaintiffs describe in the complaint: "Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract. Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract. For the sake of convenience, these claims are brought in a single count." [Doc. No. 1] at 34 n. 2.

2. This is not the first case in the Multidistrict Litigation that has been certified. *See, e.g., In re Checking Account Overdraft Litigation,* 275 F.R.D. 666 (S.D.Fla.2011) (involving Union Bank, N.A.).

## III.  The Defendants' Motion to Dismiss

At the outset, the court notes that the court in the *In re Checking* Multidistrict Litigation has addressed each of the defendants' arguments presented in their motion to dismiss in one context or another in that ongoing litigation.  While the defendants emphasize that this court should not simply blindly adopt the holdings from that litigation, the court in the Multidistrict Litigation is contending with the same basic claims as are at issue here, only in a much broader set of cases.  That court has devoted substantial time and resources to its adjudication of the *In re Checking* cases, and this court has considered much of its reasoning and finds it to be quite sound.

The defendants have moved for dismissal of each of the plaintiffs' four claims based on individual rationales.  In addition, the defendants have presented a general argument for dismissal covering all of the plaintiffs' claims.

### A.  The Motion to Dismiss Standard

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993).  A complaint attacked by a Rule 12(b)(6) motion to dismiss generally does not need detailed factual allegations:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S.Ct. 1955.  Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim," but a complaint must also "provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).  A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is subject to dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

### B.  The Defendants' General Argument for Dismissal

The defendants first argue that the plaintiffs have not alleged "any legally or factually cognizable basis for the Court to preclude one posting order and to mandate another" [Doc. No. 8–1] at 26.  The defendants argue that the federal agency responsible for regulating national banks' imposition of fees, the Office of the Comptroller of the Currency ("the OCC"), has declined to set for a bright line rule for the order banks should post deposits and debits "that would clearly result in the best outcome for all or most customers … [because of] the inherent complexity of payments processing."  Unfair or Deceptive Acts or Practices, 74 Fed.Reg. 5498, 5547–48 (Jan. 29, 2009).  The defendants also cite caselaw holding that state laws cannot restrict the manner in which banks charge fees and post transactions because of federal preemption through National Bank Act. *See Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n. 2 (11th Cir.2011) (holding that state law restrictions on the manner in which national banks determine fees are invalid because the "significant objective" of the National Bank Act, 12 U.S.C. §§ 21 et seq., and 12 C.F.R. § 7.4002 "is to allow national banks to charge fees and to allow banks latitude to decide how to charge them."); *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 284 (6th Cir. 2009) (holding that 12 C.F.R. § 7.4002 displaces any requirement that "mandates the

order in which ... [national] banks carry out their daily account balancing and account-management functions."). Therefore, the defendants argue, the plaintiffs' claims cannot survive because each relies on the fallacious premise that posting high-to-low was a violation of state law.

In response, the plaintiffs argue that the defendant has misconstrued the nature of their claims—they are not asking the court to require a certain order of posting, they are alleging that the defendants deliberately manipulated the order of posting in such a way that caused injuries to the plaintiffs that are cognizable under state contract and tort law.

The court agrees with the plaintiffs that the defendants have misconstrued the nature of the plaintiffs' claims. It is the allegation of deliberate manipulation at the expense of bank customers that forms the underlying premise for the plaintiffs' claims, not that banks are required to post transactions in one order and not another. The defendants' regulatory and federal case law citations all essentially apply to an argument for federal preemption of the plaintiffs' state law claims based on the supremacy of the National Bank Act and its implementing regulations. Nevertheless, the defendants explicitly state that they plan to assert a federal preemption defense should the court deny the instant motion to dismiss; and therefore they are not asserting such a defense here. The court notes that the court in the *In re Checking* litigation has already performed a thorough preemption analysis using the same authority the defendants cite here, and more. This court expressly does not rule on the issues of federal preemption.

Accepting the allegations in the plaintiffs' complaint as true, the defendants have failed to present an adequate motion to dismiss the plaintiffs' claims on general grounds because the defendants have misconstrued the nature of the plaintiffs' claims. A proper reading of the claims reveals sufficient pleadings, at least as they relate to the defendants' general argument.

## C. The Defendants' Motion to Dismiss the Plaintiffs' Specific State Law Claims

■ The defendants have also moved to dismiss the named plaintiffs' state law claims stating, "Plaintiffs' allegations fail to state a claim ... under the law of any state with any plausible connection to the facts and circumstances Plaintiffs allege" [Doc. No. 8–1] at 1. The three possible states are North Carolina (where the plaintiffs are residents), Texas (where the defendants are headquartered), and Georgia (the current forum state). The defendants have not performed a conflict of laws analysis or even taken a position on which states' law should apply; they simply analyze the laws of all three states in their brief supporting the motion. The court declines to sua sponte perform its own conflict of laws analysis without more thorough briefing by the parties on the issue. Therefore, the defendants' motion to dismiss is DENIED.

## IV. Conclusion

For the foregoing reasons, the defendants' motion to strike the plaintiffs' class action allegation [Doc. No. 8–1] is DENIED, and the defendants' motion to dismiss [Doc. No. 8–2] is DENIED. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A) the defendants have 14 days from the date of this order to serve a responsive pleading. The court ordered stay [Doc. No. 16] is hereby lifted. The parties have until 16 days after the defendants file an answer in response to the plaintiffs' complaint to participate in a Rule 26(f) conference, and the parties shall until 30 days after such an answer to serve initial disclosures and file a Joint Preliminary Report and Discovery Plan.